FILED
CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

FEB 21 2019   ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
—————————————————————X

UNITED STATES OF AMERICA
    *ex rel.* AUDREY CLARELLI and,

LAVERNE O'REILLY

STATE OF NEW YORK
*el rel.* AUDREY CLARELLI and
LAVERNE O'REILLY,

              Plaintiffs,

No. CV-10-5083 (FB)

STIPULATION AND ORDER
OF SETTLEMENT.



CENTER FOR ADDICTION RECOVERY
AND EMPOWERMENT LLC,

individually, and doing business as CARE
EWA LOSKOT D'SOUZA, individually,
and doing business as CARE

EDWARD KRINETZ,
JOHN and/or JANE DOES # 6-10,

███████████████████
█████████████████

                              Defendants.
_____   X

## STIPULATION AND ORDER OF SETTLEMENT

This Stipulation and Order of Settlement (the "Agreement") is entered into between and among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services (collectively, the "United States"), the State of New York (the "State"), acting through the New York State Office of the Attorney General, Medicaid Fraud Control Unit ("MFCU"), Defendants Center for Addiction Recovery and Empowerment, LLC ("CARE") and Ewa Loskot D'Souza ("Loskot D'Souza"), and Relator Laverne O'Reilly ("Relator" or "O'Reilly")[1] (hereafter collectively referred to as the "Parties"), through their authorized representatives.

## RECITALS

A.   CARE was incorporated in the State of New York as a limited liability company with its principal place of business located at 3001 Expressway Drive, N. Suite 300, Islandia, Suffolk County, New York prior to 2011 and its principal place of business located at 2805

---

[1] The United States and the State of New York decline to intervene in the allegations filed by relator Audrey Clarelli.

Veterans Memorial Highway, suites 4 and 5, Ronkonkoma, Suffolk County, New York for 2011 though the present.

      B.     CARE operated an out-patient facility providing mental health and substance abuse treatment services and was enrolled as a provider in the New York Medical Assistance Program, 42 U.S.C. 1396-1396w-5 ("Medicaid" or the "Medicaid Program"), under Medicaid provider number 03035678, during all times relevant to this Agreement.

      C.     Ewa Loskot D'Souza was the President, founder and sole owner of CARE during all times relevant to this Agreement. (Hereinafter, "CARE" refers to Defendants CARE and Loskot D'Souza collectively.)

      D.     On or about November 8, 2010, Relators Audrey Clarelli and Laverne O'Reilly filed a *qui tam* complaint in the United States District Court for the Eastern District of New York (the "Court"), captioned *United States of America and State of New York, ex rel. Audrey Clarelli and Laverne O'Reilly v.* ████████████████████████████ pursuant to the Federal False Claims Act, 31 U.S.C. §§ 3730 (b) – (h), and the New York False Claims Act, State Fin. Law § 190(2) (the "Civil Action").

      E.     The Department of Health ("DOH"), following a request on or about January 30, 2014, by the Office of the Medicaid Inspector General ("OMIG"), pursuant to 18 NYCRR § 518.7, instituted a withhold from payment (hereinafter, the "Withhold Request"), and held in escrow an amount equal to ten percent (10%) of the claims submitted by CARE to Medicaid (the "Withheld Funds").

      F.     The United States and the State contend that they have certain civil claims against CARE under the Federal False Claims Act, 31 U.S.C. §§ 3729-33, *et seq.*, the New York False

Claims Act, State Fin. Law §§ 189, *et seq.*, other New York statutes and the common law, as specified in Paragraphs 11 and 13, below, arising from the following conduct, which occurred during the period of January 10, 2010 through September 14, 2011 (the "Claims Period"), as described below (the "Covered Conduct"):

    (a) During the Claims Period, CARE knowingly submitted or caused to be submitted false claims to Medicaid, and received payment thereon, for group therapy sessions that were not rendered or were unnecessary.

G.    This Agreement is made in compromise of disputed claims and is neither an admission of liability by CARE or by Loskot·D'Souza nor a concession by the United States and the State that their claims are not well founded. Neither this Agreement, its execution, nor the performance of any obligation under it, including any payment, nor the fact of settlement, is intended to be, or shall be understood as, an admission of liability or wrongdoing, or other expressions reflecting upon the merits of the dispute by CARE.

H.    Relator Laverne O'Reilly claims entitlement under 31 U.S.C. §3730 (d) and New York State Fin. Law § 190(6) to a share of the proceeds of this Agreement and to Relator's reasonable expenses, attorneys' fees, and costs.

I.    To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of claims relating to the Covered Conduct, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant to the following terms and conditions.

## II. TERMS AND CONDITIONS

1.    CARE shall pay to the United States and the State a total settlement amount of FOUR HUNDRED SEVENTY FIVE THOUSAND DOLLARS ($475,000), plus applicable

4

interest, (referred to as the "Total Settlement Amount"). The Parties agree that EIGHTEEN THOUSAND ONE HUNDRED EIGHTY DOLLARS ($18,180) of the Total Settlement Amount constitutes restitution.

    2.    From the Total Settlement Amount, CARE shall pay to the United States the total sum of ONE HUNDRED NINETY THOUSAND DOLLARS ($190,000), plus applicable interest, (the "United States Settlement Amount"), and to the State the total sum of TWO HUNDRED EIGHTY FIVE THOUSAND DOLLARS ($285,000) plus applicable interest, (the "State Settlement Amount").

    3.    The Total Settlement Amount shall be paid to the United States and to the State as follows:

    a.    *Initial Payments to the United States and to the State*

        (i)    The Parties understand that as of November 19, 2018, the Withheld Funds totaled at least TWO HUNDRED NINETY SEVEN THOUSAND THREE HUNDRED FORTY NINE DOLLARS AND SEVEN CENTS ($297,349.07);

        (ii)    CARE consents to the transfer and payment to the State of all of the Withheld Funds held in escrow by DOH pursuant to the Withhold Request;

        (iii)    Within 30 days of the Effective Date of this Agreement, MFCU will request that OMIG direct DOH to cease withholding additional funds from claims submitted by CARE pursuant to the Withhold

Request. Further MFCU will request that DOH transfer all Withheld Funds to MFCU as soon as practicable pursuant to this Agreement;

(iv)   CARE agrees to cooperate with MFCU, OMIG, and other representatives of the State in effectuating the transfer of the Withheld Funds to the State, including but not limited to, executing any documents necessary to effectuate the transfer;

(v)   All Withheld Funds transferred and paid to the State shall be applied and credited toward CARE's payment of the Total Settlement Amount pursuant to the terms of this Agreement;

(vi)   If any Withheld Funds are transferred or paid by DOH directly to CARE before CARE's full payment of the Total Settlement Amount, CARE agrees to notify the State immediately and to remit all Withheld Funds received to MFCU by wire transfer or certified check within five (5) business days of the receipt of such Withheld Funds.  Once received by MFCU, these funds will be credited and applied toward payment of the Total Settlement Amount pursuant to the terms of this Agreement;

(vii)   After it receives the Withheld Funds, the State shall transfer to the United States 40% of the amount it receives and such amount shall be credited to the amount that CARE owes to the United States as the "United States Initial Payment."  The State shall credit 60% of

6

the Withheld Funds that it receives to the amount that CARE owes to the State as the "State Initial Payment" and

(viii) No later than 60 days from the Effective Date of this Agreement, MFCU will provide written notice (the "Written Notice") to CARE of the total amount of Withheld Funds received by the State as of the date of the Written Notice, by sending the Written Notice via Overnight Mail to CARE's counsel.

b. *Remaining Balance Payments to the United States and to the State*

(i) CARE shall pay the Remaining Balance of the Total Settlement Amount due to the United States and the State after application of the United States Initial Payment and the State Initial Payment, plus applicable interest, in 33 monthly installments (the "Installment Payment") in accordance with Exhibit 1 (United States Remaining Balance Payment Schedule) and Exhibit 2 (New York State Remaining Balance Schedule);

(ii) Each monthly Installment Payment shall be due on or before the 1st of every month, commencing with the month of March 2019 and ending with the month of November 2021 (the "Installment Period");

(iii) CARE may prepay any portion of the Remaining Balance of the Total Settlement Amount due hereunder without penalty, but no prepayment shall reduce the monthly Installment Payments;

7

However the United States and the State agree to reduce the amount of applicable interest, as appropriate. Any such prepayment of the Remaining Balance of the Total Settlement Amount shall be made to the United States and to the State in amounts equal to their respective proportionate shares of the Total Settlement Amount.

(iv)   If, after the date of November 1, 2021, there is an outstanding balance due to the United States or to the State under this Agreement, CARE shall pay the outstanding balance no later than November 10, 2021; and

(ix)   If the State receives Withheld Funds from DOH in excess of TWO HUNDRED NINETY SEVEN THOUSAND THREE HUNDRED FORTY NINE DOLLARS AND SEVEN CENTS ($297,349.07), the excess amount shall be applied to the Remaining Balance of the Total Settlement Amount and deducted from CARE's final Installment Payment(s) to the United States and the State.

4.    CARE shall discharge its debt to the United States for the United States Settlement Amount under the following terms and conditions:

a)    Each Installment Payment owed to the United States described above shall be made by an electronic funds transfer pursuant to written instructions provided by the United States Attorney's Office.

b)    In the event that CARE fails to pay the United States Settlement Amount within the time such payment is due, CARE shall be in default of their payment obligations ("Default"). The United States will provide written notice of the Default to CARE and they shall have the opportunity to cure such Default within five (5) business days from the date of receipt of the notice. Notice of Default will be delivered to CARE, or to such other representative as they shall designate in advance in writing. If CARE fails to cure such

8

Default within five (5) business days of receiving the Notice of Default ("Uncured Default"), interest on the United States Settlement Amount shall accrue at the rate of 12% per annum compounded daily from the date of Default on the unpaid amount (principal and interest balance). Upon an Uncured Default, the United States, at its sole option, may: (i) offset the unpaid balance from any amounts due and owing to CARE by any department, agency, or agent of the United States at the time of Default; (ii) collect the entire unpaid balance of the Settlement Amount, plus interest, including 12% interest from the date of Default, and all other amounts due upon the event of Default as specified in this paragraph; (iii) file a civil action for the Covered Conduct; (iv) exercise any other rights granted by law or in equity, including referral of this matter for private collection; or (v) exclude CARE from participating in all Federal health care programs pursuant to Paragraph 8, below, until CARE pays the United States Settlement Amount, applicable interest, and reasonable costs as set forth in this Paragraph. In the event a complaint is filed pursuant to subsection (iii) of this paragraph, CARE agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, res judicata, or similar theories to the allegations in the complaint, except to the extent such defenses were available to CARE on the Effective Date of this Agreement. CARE agrees not to contest any consent judgment, offset, recoupment, and/or collection action undertaken by the United States pursuant to this paragraph, either administratively or in any state or federal court, except that CARE shall not be precluded from asserting the affirmative defense of payment or miscomputation. CARE shall pay to the United States all reasonable costs of collection and enforcement under this paragraph, including attorneys' fees and expenses.

5.      CARE shall discharge its debt to the State for the State Settlement Amount under the following terms and conditions:

a)      CARE shall pay each Installment Payment owed to the State by certified check, bank check or money order, made payable to the "MFCU Restitution Fund" and delivered to the New York State Attorney General's Office, Medicaid Fraud Control Unit, 28 Liberty Street, New York, New York 10005, Attention: Finance Department, or electronically, pursuant to written transfer instructions to be provided by MFCU.

b)      In the event that CARE fails to pay the State Settlement Amount within the time such payment is due, CARE shall be in default of their payment obligations ("Default"). The State will provide written notice of the Default to CARE and CARE shall have the opportunity to cure such Default within five (5) business days from the date of receipt of the notice. Notice of Default will be delivered to CARE, or to such other representative as it shall designate in advance in writing. In the event of an Uncured Default, the remaining unpaid balance of the State Settlement Amount, shall become immediately due and payable, and interest shall accrue at the rate of 12% per annum compounded daily from the date of Default on the remaining unpaid total (principal and interest balance). Upon an Uncured Default, the State, at its sole option, may: (i) execute upon the consent judgment provided under Paragraph 6, below, (ii) offset the remaining unpaid balance from any

amounts due and owing to CARE by any department, agency, or agent of the State at the time of Default; (ii) collect the entire unpaid balance of the State Settlement Amount, plus interest, including 12% interest from the date of Default, and all other amounts due upon the event of Default as specified in this paragraph; (iii) file a civil action for the Covered Conduct; (iv) exercise any other rights granted by law or in equity, including referral of this matter for private collection; or (v) exclude CARE from participating in all State health care programs until CARE pays the State Settlement Amount, applicable interest. Acceptance by the State of late payment with interest shall not cure any other Default hereunder. In the event a complaint is filed pursuant to subsection (iii) of this paragraph, CARE agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, res judicata, or similar theories to the allegations in the complaint, except to the extent such defenses were available to CARE on the Effective Date of this Agreement. CARE agrees not to contest any consent judgment, offset, recoupment, and/or collection action undertaken by the State pursuant to this paragraph, either administratively or in any state or federal court, except that CARE shall not be precluded from asserting the affirmative defense of payment or miscomputation. CARE shall pay to the State all reasonable costs of collection and enforcement under this paragraph, including attorneys' fees and expenses.

c) In the event that the State seeks remedies for collection or enforcement of CARE's obligations hereunder, and the State substantially prevails in its collection or enforcement action, CARE shall be responsible for all costs and expenses incurred by the State in connection with that action.

6.      In consideration for the United States' and the State's agreement to accept transfer

and payment of the Withheld Funds and the Installment Payments as delineated in Paragraphs 3 -

5, above, CARE will execute an Affidavit of Confession of Judgment in the amount of FOUR

HUNDRED SEVENTY FIVE THOUSAND DOLLARS ($475,000), in the form annexed as

Exhibit 3, simultaneously with the execution of this Agreement. CARE consents to the filing of

said Affidavit of Confession of Judgment and Judgment thereon (the "Judgment" without further

notice), less any monies received, plus all costs of collection, including attorney's fees and

expenses incurred equal to ten percent of the total amount owed, post-judgment interest and other

proper relief without further notice to CARE. The State, in its sole discretion, may exercise any

rights granted by law or in equity to collect on the debt. CARE agrees not to contest any consent

judgment, offset, or any collection action undertaken by the State pursuant to this paragraph, either administratively or in any state or federal court. The State may take all measures available to it to execute on the consent judgment. Within 30 days of CARE's full payment of the Total Settlement Amount, the State shall file a satisfaction of judgment with respect to the consent judgment in accordance with CPLR § 5020.

7.      Notwithstanding the foregoing, in the event of an Uncured Default as defined in Paragraphs 4 and 5 above, OIG-HHS may exclude CARE from participating in all Federal health CARE programs until CARE pays the remaining United States Settlement Amount and State Settlement Amount, applicable interest, and reasonable costs, as set forth in Paragraphs 1 and 2, above. OIG-HHS will provide written notice of any such exclusion to CARE. CARE waives any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7), and agrees not to contest such exclusion either administratively or in any state or federal court. Reinstatement to program participation is not automatic. If at the end of the period of exclusion CARE wishes to apply for reinstatement, CARE must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. CARE will not be reinstated unless and until OIG-HHS approves such request for reinstatement.

8.      In the event of any criminal prosecution or administrative action relating to the Covered Conduct, CARE further waives and will not assert any defenses it may have to any action relating to the Covered Conduct to the extent that such defenses may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the United States Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the United States Constitution, this Agreement bars a remedy sought in such action. Nothing in this paragraph

11

or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Total Medicaid Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

**RELEASES**

9.     Subject to the exceptions in Paragraph 10 below (concerning excluded claims), and conditioned upon CARE's full payment of the Total Settlement Amount, the United States releases CARE from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; any statutory provision creating a cause of action for civil damages or civil penalties for which the Civil Division of the Department of Justice has actual and present authority to assert and compromise pursuant to 28 C.F.R. Part O, Subpart I. 0.45(d), or the common law theories of payment by mistake, unjust enrichment, and fraud.

10.     Notwithstanding the releases given in Paragraphs 9 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

a.     Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b.     Any criminal liability;

c.     Except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from Federal healthcare programs;

d.     Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.     Any liability based upon obligations created by this Agreement;

12

    f.     Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

    g.     Any liability for failure to deliver goods or services due; and

    h.     Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

11.    Subject to the exceptions in Paragraph 12 (concerning excluded claims) below, and conditioned upon CARE's full payment of the Total Settlement Amount and subject to Paragraph 24 below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date), the State releases CARE from any civil monetary cause of action that the State has for the Covered Conduct under the New York False Claims Act, N.Y. State Fin. Law §§ 189 *et seq.*, Social Services Law § 145-b, Executive Law § 63(12), Executive Law §63-c, or any common law or equitable theories of liability, including but not limited to unjust enrichment and fraud.

12.    Notwithstanding any release given in this Agreement, or any other term of the Agreement, the following claims of the State are specifically reserved and are not released:

    a.     Any civil, criminal or administrative liability arising under New York Tax Law;

    b.     Any civil liability that CARE has or may have under any state statute, regulation or rule not covered by this Agreement;

    c.     Any administrative liability, including mandatory or permissive exclusion from the Medicaid program;

    d.     Any criminal liability for any conduct other than the Covered Conduct. The STATE will not prosecute or bring any other action against CARE for violations of law arising from the Covered Conduct.

13

e.   Any liability to the State (or its agencies) for any conduct other than the Covered Conduct;

f.   Any liability of individuals other than Defendant Loskot D'Souza.

g.   Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

h.   Any liability for failure to deliver goods or services due;

i.   Any liability for personal or property damage or for other consequential damages arising from the covered conduct;

j.   Any liability for patient abuse or neglect; and

k.   Any liability based upon obligations created by this Agreement.

13.   CARE fully and finally releases the United States, the State, and their agencies, current and former employees, officers, agents, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that CARE has asserted, could have asserted, or may assert in the future against the United States, State, or their agencies, current or former employees, officers, agents, and servants, related to the matters arising from the Covered Conduct, the Civil Action, the investigation and any prosecution thereof, and this Agreement.

14.   In consideration of the obligations of the Relator set forth in this Agreement, Care, on behalf of itself, and its officers, agents and employees fully and finally release Relator and her respective heirs, successors, attorneys, agents, and assigns from any claims that Care has asserted, could have asserted, or may assert in the future against Relator and her heirs, successors, attorneys, agents and assigns related to the Covered Conduct, Relator's investigation and prosecution thereof.

14

15.    In consideration of the obligations of CARE set forth in this Agreement, Relator for herself and for her heirs, successors, attorneys, agents, and assigns agrees to release CARE from any civil monetary claim the Relator has or may have for herself for the Covered Conduct against CARE or on behalf of the United States or the State under the federal False Claims Act, 31 U.S.C. §§ 3729-3733, or the New York False Claims Act, N.Y. State Fin. Law §§ 189 *et seq.*, except that Relator retains her claims to seek reasonable attorneys fees and costs from CARE.

16.    Payments by the United States and the State to the Relator, as provided in § 3730(d)(1) and N.Y. State Fin. Law §190(6)(a), are not included in this Agreement, and will be the subject of a separate agreement. The United States and the Relator have agreed on a Relator's share of the United States Settlement Amount of 15%; the State and the Relator have agreed on a Relator's share of the State Settlement Amount of 15%. Payments made to the Relator pursuant to § 3730(d)(1) and N.Y. State Fin. Law §190(6)(a) are contingent upon the United States and the State receiving the Settlement Amount payments set forth in Paragraph 2 and 3, above. It is expressly understood and agreed that the United States and the State in no way promise, guarantee, nor are liable to Relator for the collection or payment of any funds pursuant to this Agreement or the payment of Relator's share except as provided herein for funds actually collected and received by the United States and the State. Contingent upon actual receipt of payments, including accrued interest, if any, as set forth in Paragraphs 2 and 3, the United States and the State shall promptly inform Relator's counsel of such payment's receipt, and pay to Relator any agreed-upon Relator's share as soon as feasible after receipt, in accordance with payment instructions to be provided in writing by Relator's counsel.

17.   Relator and her heirs, successors, attorneys, agents and assigns shall not object to this Agreement and agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B) and N.Y. State Fin. Law §190(5)(b)(ii).  Relator, for herself and for her heirs, successors, attorneys, agents, and assigns, fully and finally releases, waives, and forever discharges the United States and the State, their agencies, current and former employees, officers, agents, and servants from any claims arising from or relating to 31 U.S.C. §§ 3729-33, *et seq.* and N.Y. State Fin. Law §190, from any claims arising from the filing of the Civil Action, from any other claims for a share of the Total Settlement Amount, and in full settlement of any claims Relator may have against the United States and the State under this Agreement.  This Stipulation does not resolve nor in any manner affect any claims that the United States or the State has or may have against Relator arising under the tax laws of the United States or the State tax laws, or any claims arising under this Agreement.

**OTHER PROVISIONS**

18.   The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicaid contractor (*e.g.,* Medicaid Managed care provider, fiscal intermediary, carrier) or any State payer, related to the Covered Conduct.

19.   CARE agrees not to resubmit to Medicaid, any Medicaid contractor, or any State payer any previously denied claims related to the Covered Conduct, and agrees not to appeal any such denials of claims.

20.   CARE agrees to the following:

a.   Unallowable Costs Defined:   All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47, and in Titles XVIII and

16

XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5, and the regulations and official program directives promulgated thereunder) incurred by or on behalf of CARE, its present or former officers, directors, employees, shareholders, and agents in connection with:

    i.    the matters covered by this Agreement;

    ii.    the State's audit(s) and civil and any criminal investigation(s) of the matters covered by this Agreement;

    iii.    CARE's investigation, defense, and corrective actions undertaken in response to the State's audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

    iv.    the negotiation and performance of this Agreement;

    v.    the payments CARE makes to the State pursuant to this Agreement and any payments CARE makes to Relator, including costs and attorneys' fees,

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program ("FEHBP") (hereinafter referred to as "Unallowable Costs").

b.  Future Treatment of Unallowable Costs:  Unallowable Costs shall be separately determined and accounted for in non-reimbursable cost centers or categories by CARE, and CARE shall not charge such Unallowable Costs directly or indirectly to any contracts with or grants from the United States, any HHS or HRSA program, or any State Medicaid program, or otherwise seek payment for such Unallowable Costs through any, cost reports, cost statements, information statements, appeals, grant applications or other payment requests submitted by CARE or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c.  Treatment of Unallowable Costs Previously Submitted for Payment: CARE further agrees that within 90 days of the Effective Date it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, Medicaid and FEHBP fiscal agents, and HHS or HRSA agents, any Unallowable Costs (as defined in this paragraph) included in payments previously sought from the United States, State, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, grant applications, appeals, or other

17

payment requests already submitted by CARE or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, grant applications, appeals, or other payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the unallowable costs. CARE agrees that the United States and the State, at a minimum, shall be entitled to recoup from CARE any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, grant applications, appeals, or requests for payment. Any payments due after the adjustments have been made shall be paid to the United States and to the State. The United States and the State reserve their rights to disagree with any calculations submitted by CARE or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this paragraph) on CARE or any of its subsidiaries or affiliates', cost reports, cost statements, information reports, grant applications, appeals, or other payment requests.

d. Nothing in this Agreement shall constitute a waiver of the rights of the United States and State to audit, examine, or re-examine CARE's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this paragraph.

21.    CARE agrees that it waives and shall not seek payment for any of the healthcare billings covered by this Agreement from any healthcare beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

22.    CARE warrants that it has reviewed its financial situation and that it currently is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and (a) shall remain solvent following payment of the Settlement Amount due as of the Effective Date (either through payment or by transfer of the Withhold Funds to the State) of the Agreement and (b) expects to remain solvent following payment of the remainder of the Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for

new value given to CARE, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which CARE was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

23.     If within 91 days of the Effective Date of this Agreement or of any payment made under this Agreement, CARE commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of CARE's debts, or seeking to adjudicate CARE as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for CARE or for all any substantial part of CARE's assets, CARE agrees as follows:

   a.   CARE's obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and CARE shall not argue or otherwise take the position in any such case, proceeding, or action that: (i) CARE's obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) CARE was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payments made to the United States or New York State; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to CARE.

   b.   If CARE's obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States and the State, at their sole option, may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against CARE for the claims that would otherwise be covered by the release provided in Paragraph 2 above. CARE agrees that: (i) any such claims, actions, or proceedings brought by the State are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this paragraph, and CARE shall not argue or

otherwise contend that the United States and State's claims, actions, or proceedings are subject to an automatic stay; (ii) CARE shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding that are brought by the United States and the State within 60 calendar days of written notification to CARE that the releases have been rescinded pursuant to this paragraph, except to the extent such defenses were available on November 8, 2010, and (iii) the United States and the State have a valid claim against CARE in the amount of Four Hundred Seventy Five Thousand Dollars ($475,000), and the United States and the State may pursue their claims in the case, action, or proceeding referenced in the first clause of this paragraph, as well as in any other case, action, or proceeding.

c. CARE acknowledges that its agreements in this paragraph are provided in exchange for valuable consideration provided in this Agreement.

24.    Contemporaneously with the filing of this Settlement Agreement, the United States and the State shall file in this Civil Action a Notice of Partial Intervention and a Proposed Unsealing Order.  Upon receipt of the Initial Payment described in Paragraph 3, above, the United States, State and Relator shall promptly sign and file a Joint Stipulation of Dismissal of this Civil Action pursuant to Rule 41(a)(1).  The dismissal shall be with prejudice as to Relator.  With respect to the United States and State, the dismissal shall be with prejudice as to the allegations contained in the Covered Conduct, and without prejudice as to any other to allegations contained in Relator's complaint.

25.    Except as expressly provided to the contrary in this Agreement with regard to CARE's liability to counsel for Relator for available attorney's fees and costs, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

26.    Each Party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

20

27.   This Agreement is governed by the laws of the United States.  The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Eastern District of New York.  The State does not waive any objection it may have that a claim by CARE for any payment by the State is properly vested in the New York State Court of Claims.

28.   For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

29.   The terms of this Agreement shall remain effective notwithstanding any appeal, collateral attack, or any challenge to any criminal charge, conviction, plea or sentencing of any person related to the Covered Conduct, including but not limited to, the reversal, modification, or dismissal of all of any portion of such charge, conviction, plea or sentence, or the charging, conviction, plea or sentencing of any other person.

30.   This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

31.   The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

32.   This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

33.   This Agreement is binding on CARE's successors, owners, transferees, heirs, and assigns.

34.   This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

21

35.    All Parties consent to the disclosure of this Agreement, and information about this Agreement, to the public by the United States and the State.

36.    Any failure by the United States or the State to insist upon the strict performance of any of the provisions of this Agreement shall not be deemed a waiver of any of the provisions hereof, and the United States and the State, notwithstanding that failure, shall have the right thereafter to insist upon strict performance of any and all of the provisions of this Agreement.

37.    This Agreement is intended to be for the benefit of the Parties only.  The Parties do not release any claims against any other person or entity.

38.    CARE agrees not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any finding in this Agreement or creating the impression that this Agreement is without factual basis. Nothing in this paragraph affects CARE's: (a) testimonial obligations; or (b) right to take legal or factual positions in defense of litigation or other legal proceedings to which the State is not a party; or (c) right to state that this Agreement is not an admission of liability by CARE.

39.    This Agreement is effective on the date of signature of the last signatory to the Agreement ("Effective Date" of this Agreement).  Signatures delivered by facsimile transmission or as .pdf attachments shall constitute acceptable, binding signatures for purposes of this Agreement.

40.    Any notices pursuant to this Agreement shall be in writing and shall, unless expressly provided otherwise herein, be given by hand delivery, express courier, or facsimile transmission followed by postage-prepaid mail, and shall be addressed as follows:

22

**IF TO THE UNITED STATES:**

United States Attorney's Office
Eastern District of New York; Attn: Assistant United States Attorney Diane Beckman
610 Federal Plaza, Central Islip, New York 11722

**IF TO THE ATTORNEY GENERAL and the STATE:**

New York State Attorney General's Office
Medicaid Fraud Control Unit; Attn: Chief, Civil Enforcement Division
28 Liberty Street, 13th Floor, New York, New York 10005

**IF TO DEFENDANTS CENTER FOR ADDICTION RECOVERY AND
EMPOWERMENT, LLC and EWA LOSKOT D'SOUZA:**

Ewa Loskot D'Souza
Center for Addiction Recovery and Empowerment, LLC
Law Offices of Stanley E. Orzechowski, P.C.
38 Southern Boulevard, Suite 3, Nesconset, New York 11767
Facsimile: 631- 862-7183

**IF TO RELATOR:**

Laverne O'Reilly
Campanelli & Associates, P.C..
Andrew J. Campanelli, Esq
*Attorneys for Relator*
623 Stewart Avenue, Suite 203, Garden City, NY 11530
Tel. (516) 746-1900

<u>**THE UNITED STATES**</u>

Dated: January 22 2019

RICHARD P. DONOGHUE
United States Attorney
Eastern District of New York

By: _____

Diane C. Leonardo
Assistant United States Attorney
610 Federal Plaza
Central Islip, New York 11722

2/13/2019

By: _____

Lisa M. Re
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of the Inspector General
United States Department of Health and Human Services

<u>**THE STATE OF NEW YORK**</u>

Dated: January 18, 2019

LETITIA JAMES
Attorney General of the State of New York

By: _____

Lara Merchan
Special Assistant Attorney General
Medicaid Fraud Control Unit
300 Motor Parkway, suite 210
Hauppauge, New York 11788



### DEFENDANTS CENTER FOR ADDICTION RECOVERY AND EMPOWERMENT, LLC AND EWA LOSKOT D'SOUZA

*By signing below, I confirm that I have read and understood the above.*

AGREED AND CONSENTED TO:

_____

Ewa Loskot D'Souza, *as Owner and President of*
CENTER FOR ADDICTION RECOVERY AND
EMPOWERMENT, LLC

_____

EWA LOSKOT D'SOUZA, individually

On the 1st day of January in the year 2019, before me, the undersigned, personally appeared Ewa Loskot, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument.

_____

NOTARY PUBLIC

KIMBERLY TORREGROSSA
Notary Public, State of New York
Reg. No. 01TO6354891
Qualified in Suffolk County
Commission Expires 02/21/2021

*Approved as to Form:*

Dated: January 17, 2019

LAW OFFICES OF STANLEY E. ORZECHOWSKI, P.C.
*Attorney for Defendant*
38 Southern Boulevard
Nesconset, New York 11767

By: _____

Stanley E. Orzechowski, ESQ.

25

Jan. 31. 2019 12:20PM    AMSCOT FINANCIAL                                      No. 5248    P. 2



**RELATOR**
*By signing below, I confirm that I have read and understood the above.*

AGREED AND CONSENTED TO:

LAVERNE O'REILLY

On the 31st day of January in the year 2019, before me, the undersigned, personally appeared
Laverne O'Reilly, personally known to me or proved to me on the basis of satisfactory evidence
to be the individual whose name is subscribed to the within instrument.

ROSE CARMELLE SAINT JEAN
NOTARY PUBLIC
STATE OF FLORIDA
NOTARY PUBLIC GG095188
Expires 4/18/2021

*Approved as to Form:*

CAMPANELLI & ASSOCIATES, P.C.
*Attorneys for Relator*
623 Stewart Avenue, Suite 203
Garden City, NY 11530

By:
ANDREW J. CAMPANELLI, ESQ.
Tel. (516) 746-1900

**SO ORDERED.**

/s/ Joanna Seybert

Honorable Joanna Seybert          2/21/2019
United States District Court

26